OSBORNE v. NICHOLSON. See Case No. 10,595.

## Case No. 10,596.

### OSBORNE v. BENSON et al.

[5 Mason, 157.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1828.

MORTGAGES—TAKING NEGOTIABLE NOTES FOR THE DEBT—ASSIGNMENT OF MORTGAGE.

Where a mortgage had been given to one partner to secure a debt of a firm, and after the failure of the firm, and an assignment of the debt, one of the partners entered into an arrangement with the debtor, without the consent of the assignees, by which he took negotiable notes for the debt payable on time, and afterwards he assigned the mortgage to the other partner, who was not party to the arrangement; it was *held*, that the mortgage was not extinguished.

Writ of entry sur intrusion brought by the demandant [Daniel Osborne], as administrator of David Osborne, deceased, upon a mortgage, and counting on the seizin of the intestate, David Osborne, in fee and in mortgage, and an intrusion by the tenants [Joshua Benson and Eliza Benson, his wife] after his death. Plea, the general issue. At the trial, it appeared in evidence, that one David Dean, was entitled to 1/54th part of the demanded premises, as heir of one Jeremiah Bumstead, who died seized of the estate, intestate. Dean, on the 31st of January, 1823, executed a mortgage to J. B. Osborne (who was in partnership with the intestate, David Osborne, under the firm of D. & J. B. Osborne,) of his share in Bumstead's estate, and purporting to be for the security of $500, payable in one year after Bumstead's estate was settled. A note dated the preceding day (the 30th of January), for the same sum, payable to J. B. Osborne, at the same time was also executed, and delivered, with the mortgage, to J. B. Osborne. On the 28th of July, 1823, J. B. Osborne assigned the same mortgage to the intestate, David Osborne. The tenants claimed the premises under a subsequent deed from David Dean to the tenant, Eliza Benson (then Eliza Griffen), dated the 16th of August, 1824, and purporting to be a conveyance, in consideration of 450 dollars, of all Dean's share in Bumstead's estate. The defence was, that nothing was due under the mortgage from Dean to Osborne, and that the same was fully extinguished, or satisfied. The facts were somewhat complicated. But the material facts were these. The mortgage to J. B. Osborne was given upon a contract, entered into by Osborne, that the firm should deliver to Dean, or his order, goods in Boston, to the amount of $500, suitable for the Penobscot market and trade

1 [Reported by William P. Mason, Esq.]

at Prospect, of such qualities and sorts, &c. as Dean, or his agent, should request, on the credit stated in the mortgage. A similar note and mortgage was executed to J. B. Osborne, at the same time, by one Daniel F. Weeks and his wife (who was also an heir in like degree as Bumstead), for a similar consideration. J. B. Osborne gave to Dean and Weeks, severally, a note in his own name, promising to deliver goods to them severally to the amount of $500, as above mentioned. Upon the next day (the 1st of February), these notes were given up by the parties, and by consent, a single note was given by J. B. Osborne to deliver to Dean alone, or his administrator, goods to the amount of $1000. On the same day, Dean wrote on the same note an order on J. B. Osborne, for a delivery of the goods to Weeks, and to charge them in account with Dean. In the same month (February), the firm of D. & J. B. Osborne delivered goods, under the order, to Weeks, to the amount of $903.88; and upon a settlement of accounts with Dean, on the 25th of April 1823, it appeared, that the amount then due from him to the firm of the Osbornes was $1009.97. At that time the Osbornes had failed, and the account against Dean had been assigned to their assignees; but the mortgages, and notes accompanying the same, from Dean and Weeks to J. B. Osborne had not been assigned (though intended to have been), and have never since been formally assigned to their assignees. The settlement of the account between J. B. Osborne and Dean took place at the house of Osborne; and with a view to prevent Dean's being then broken up in business, it was agreed between them, that Dean should give two negotiable notes for the amount to Osborne, one for $509.97, payable in nine months, and one for $500 payable in twelve months. Nothing was said, at the time, between them, as to giving up the mortgages, or notes accompanying the same, and they were retained by J. B. Osborne. The new notes were given accordingly by Dean, and the account receipted by Osborne in the name of the firm. The assignees had no knowledge of, and were not parties or assenting to, this arrangement. Some time afterwards a demand was made upon J. B. Osborne to deliver up one or other of the sets of notes, but he declined doing any thing about it. The settlement and division of the estate of Bumstead was made in the probate office for Suffolk county on the 12th of September, 1825.

Upon these facts, Mr. Parker, for the tenants, contended, that the original mortgages to J. B. Osborne were extinguished and satisfied by the taking of the negotiable notes, under the arrangement on the 25th of April, 1823, between Osborne and Dean; and that, consequently, the subsequent assignment by Os-

borne, to the intestate of the demandant, in July, 1823, passed nothing.

Mr. Bartlett, for the demandant, contended, è contra, that there was no such extinguishment, or satisfaction under the circumstances.

STORY, Circuit Justice. My opinion is, that upon the facts, as argued, there has been no extinguishment or satisfaction of the mortgage sued on. If the goods delivered were in compliance with the original contract, entered into between Dean and J. B. Osborne, and on account of the mortgage, (which as a matter of fact must be left to the jury,) then the mortgage is a valid security upon an executed consideration. If the goods were not so delivered, then J. B. Osborne is still liable on his contract, and the mortgage is valid, as founded upon an executory contract, still subsisting and binding between the parties. In the latter view, the giving of the new notes would be wholly immaterial, since they would be in payment for other goods. But the presumption is so strong, that the goods were furnished under the original contract, that it seems difficult to resist it. Taking the fact to be so, how can the new negotiable notes operate as an extinguishment of the debt on account? That debt, at the time when these notes were given, had been assigned to assignees by the partners, to whom it was due. The assignees were ignorant of and not parties to the arrangement, by which they were received. Dean knew of the failure and assignment, and consequently knew, that J. B. Osborne had no longer any authority to extinguish, or receive payment of the debt, or to receive negotiable notes for it. These notes were, therefore, given without consideration. The mortgage given to J. B. Osborne was undoubtedly given in trust for the benefit of the partners, and not for J. B. Osborne alone. Indeed, it does not appear, that it was the intention of the parties to the arrangement itself, that the mortgage should be extinguished; or that it should no longer be a security for the debt. The inference from the acts of the parties is the other way; for it was not cancelled or surrendered. They may have intended only to substitute a definite time for the payment of the debts for an indefinite time; a certain, for an uncertain credit; a protection of Dean from suit for nine and twelve months; and that the mortgage should still stand security for the debt. I will leave the facts to the jury, if the counsel wishes it; but supposing the facts to be, as I have assumed them to be, I am of opinion, that there was no extinguishment of the mortgage in point of law.

The counsel for the tenants then consented, that the latter should be defaulted, which was done accordingly.